IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:17-CV-13-FL

| | | |
|---|---|---|
| JASMAN J. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TOWN OF WINTERVILLE, | ) | |
| | ) | |
| Defendant.[1] | ) | |

This matter is before the court on defendant's motion for summary judgment (DE 80), plaintiff's motion for partial summary judgment (DE 84), and plaintiff's motion to seal. (DE 87). The issues raised are ripe for ruling. For the following reasons, the court grants defendant's motion for summary judgment, denies plaintiff's motion for partial summary judgment, and grants plaintiff's motion to seal.

**STATEMENT OF THE CASE**

Plaintiff, proceeding pro se, commenced this action against former defendant Winterville Town Council ("Council"), former defendant and town manager Terri L. Parker ("Parker"), and defendant, plaintiff's former employer, on January 31, 2017, asserting claims of discrimination, denial of promotion, wrongful termination, and retaliation based on race, disability, and pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

---

[1] The court constructively amends the caption of this order to reflect dismissal of formerly-named defendants.

("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and pursuant to 42 U.S.C.§ 1983.  On December 5, 2017, upon partial motion to dismiss, the court dismissed all claims and defendants except plaintiff's claim against defendant for racial discrimination based on disparate treatment, wrongful discharge, and retaliation, in violation of Title VII.

On July 6, 2018, defendant filed a motion to compel, which the court granted on September 28, 2018, directing plaintiff to supplement her discovery responses.  On October 17, 2018, defendant filed a motion for sanctions, wherein defendant asserted that plaintiff failed to comply with the court's order to supplement her discovery responses, refused to sit for her first properly noticed deposition, and, upon attending deposition, refused to answer questions.  The court granted defendant's motion in part, ordering plaintiff to pay attorneys' fees, costs, and expenses related to defendant's motion to compel discovery and plaintiff's October 11, 2018, deposition.

Plaintiff filed a notice to reschedule deposition and a motion for extension of time to file response on January 16, 2019.  The court denied plaintiff's requests, providing plaintiff with a deadline of February 4, 2019, to respond to outstanding written discovery, and February 15, 2019, to complete plaintiff's deposition.  On February 4, 2019, plaintiff filed a motion to waive sanctions, which the court denied on March 1, 2019.

On March 15, 2019, defendant filed the instant motion for summary judgment, or in the alternative, dismissal for failure to prosecute or as a discovery sanction.  Defendant relies upon a statement of material facts, memorandum of law, and appendix including the following: 1) plaintiff's deposition, 2) Parker's affidavit, 3) a document titled "Written Review Disciplinary Conference Concerning Job Performance" ("written review"), 4) Amy Barrow's affidavit, and 5) a document titled "Pre-dismissal Conference Memorandum" ("memorandum").  That same date, plaintiff filed the instant motion for partial summary judgment and the instant motion to seal. In

support of those motions, plaintiff relies upon employment documents, medical records, and memorandum in support on damages. On April 5, 2019, defendant responded in opposition to plaintiff's motion for partial summary judgment.

## STATEMENT OF FACTS

The undisputed facts may be summarized as follows. In July 2008, defendant hired plaintiff as a temporary executive assistant. (Pl. Dep. (DE 89-1) 23:15-17; 24:1-2; Def's Stmt. (DE 81) at 1). Plaintiff became a full-time executive assistant in December 2008. (Pl. Dep. (DE 89-1) 24:4-9; Def's Stmt. (DE 81) at 2).[2] In 2010, Parker assumed the role as town manager and began supervising plaintiff. (Pl. Dep. (DE 89-1) 26:11-18; Def's Stmt. (DE 81) at 2).

Parker promoted plaintiff to town clerk, and selected Amy Barrow to replace plaintiff as executive assistant. (Pl. Dep. (DE 89-1) 27:17-24; 38:4-6; Def's Stmt. (DE 81) at 2). As town clerk, plaintiff's duties included drafting minutes, preparing agendas, managing records, attending meetings, certifying documents, drafting newsletters, advising the youth council, and administering oaths. (Pl. Dep. (DE 89-1) 40:19-41:16; Def's Stmt. (DE 81) at 2-3).

On March 1, 2016, Parker placed plaintiff on probation for three months and provided her with a written review chronicling plaintiff's performance deficiencies. (Written Review (DE 89-3) at 1). Specifically, the written review stated plaintiff committed following violations of defendant's personnel policy: (1) insubordination; (2) demonstrated inefficiency, negligence, or incompetence in the performance of duties; (3) discourteous treatment of the public or other employees; (4) habitual pattern of failure to report to duty at the assigned time and place; and (5) failure to meet work standards over a period of time. Id. at 3. Furthermore, the written review warned that plaintiff would be terminated if she failed to improve. Id. at 3-4.

---

[2] Page numbers in citations to documents in the record specify the page number designated by the court's electronic case filing (ECF) system, and not the page number, if any, showing on the face of the underlying document.

On June 27, 2016, plaintiff received a memorandum from Parker, wherein Parker alleged that plaintiff's job performance had not improved while she was on probation. (Memorandum (DE 89-5) at 1). Specifically, Parker alleged that plaintiff: (1) distributed an agenda, laden with mistakes, without seeking the requisite prior authorization from Parker; (2) failed to submit the required budgets for Town Council, Elections, and Youth Council; (3) ignored a councilman's request for information about a board meeting; (4) failed to communicate regarding reservations of the community room, which caused the room to become overbooked; (5) failed to ensure the public hearing on the budget was advertised in the newspaper as required by law; (6) engaged in disruptive behavior during a required CPR training session; and (7) locked the town seal in her office, despite being asked repeatedly to make it available for others to use. Id. at 1-3. Parker recommended that plaintiff be dismissed from employment and notified plaintiff of an impending pre-dismissal conference. Id. at 3.

Following the conference, plaintiff received a letter from Parker on July 1, 2016, terminating plaintiff because of plaintiff's alleged "insubordination, demonstrated inefficiency, negligence or incompetence in the performance of [her] duties, discourteous treatment of the public or other employees, and failure to meet work standards over a period of time." (July 1 Letter (DE 89-2) at 74).

## DISCUSSION

A.  Standard of Review

1.  Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). The party seeking summary judgment "bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment

as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.   Analysis

   1.   Disparate Treatment and Wrongful Termination

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual' s race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. "[I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 584–85 (4th Cir. 2015) (quoting Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002)).

"Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment action, and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). In determining whether an employee was performing at a level that met the employee's legitimate expectations, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003).

If plaintiff establishes a prima facie case, the burden shifts to defendant "to produce a legitimate, non-discriminatory reason for the adverse employment action." Guessous v. Fairview

6

Prop. Investments, LLC, 828 F.3d 208, 217 (4th Cir. 2016). If defendant meets this burden of production, then plaintiff bears the burden of demonstrating "that the legitimate reasons offered by the defendant-employer were not its true reasons but were a pretext for discrimination." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 729 (4th Cir. 2019).

Here, defendant argues that plaintiff failed to carry her initial burden of establishing a prima facie case because she has not shown satisfactory job performance or different treatment of similarly situated employees outside the protected class.

   a.  Satisfactory Job Performance

On the issue of job performance, defendant proffered an affidavit from Parker, plaintiff's supervisor, wherein Parker attested that plaintiff failed to complete her work in an accurate or timely manner on numerous occasions, demonstrated insubordinate behavior, spent an inordinate amount of time out of the office, and exhibited a lack of attention to detail. (Parker Aff. (DE 89-2) at 2-6). After providing plaintiff with written notice of her poor job performance, Parker afforded plaintiff an opportunity to correct these deficiencies during her probation; however, plaintiff failed to improve and was terminated. (Parker Aff. (DE 89-2) at 6-11).

Plaintiff has not brought forth any evidence, nor has she cited to any admissible evidence in the record, suggesting she met her employer's legitimate expectations. However, in her deposition, which defendant relied upon in furtherance of its motion, plaintiff states "I think I did an excellent job all the way through [my employment with defendant]." (Pl. Dep. (DE 89-1) at 47:22-25). Plaintiff's own deposition testimony is insufficient to create a genuine issue of material fact regarding her job performance. See King, 328 F.3d at 149 ("King's response to appellee's evidence is limited to his own claim of satisfactory job performance . . . King's own testimony, of

7

course, cannot establish a genuine issue as to whether King was meeting appellee's expectations."). Therefore, plaintiff fails to carry her burden on this issue.

    b.   Treatment of Similarly Situated Employees

Plaintiff also fails to establish a genuine issue of material fact regarding different treatment of similarly situated employees outside of the protected class. To establish a similarly situated comparator, "the plaintiff must produce evidence that the plaintiff and comparator dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haynes v. Waste Connections, Inc., 922 F.3d 219, 223-224 (4th Cir. 2019) (internal quotations omitted).

In her deposition testimony, plaintiff suggests that one of defendant's white employees was similarly situated but received different treatment. According to plaintiff, this employee left his keys in defendant's vehicle, and the vehicle was subsequently stolen, but he was not disciplined. (Pl. Dep. (DE 89-1) 101:13-102:18). However, there is no evidence that this employee and plaintiff were subject to the same standards or engaged in the same behavior. Indeed, the employee worked in defendant's Operations Center, not the clerk's office. (Parker Aff. (DE 89-2) at 12). Moreover, at the Operations Center, it was common practice for employees to leave their keys in cars, because the vehicles were parked in a fenced in lot owned by defendant. Id. Thus, unlike plaintiff, who had a history of poor job performance, this employee was following a common work practice. Plaintiff has failed to adduce evidence that the employee is a similarly situated comparator.

Plaintiff suggests the previous planning director, a white employee, is a similarly situated comparator. Plaintiff claims this employee "left the coffee pot on overnight [at work]" and "he

8

came to work at 5 p.m. thinking it was 8 a.m." but was not disciplined. (Pl. Dep. (DE 89-1) at 12). However, this employee was "experiencing health issues," and Parker believed this incident was related to those health issues. (Parker Aff. (DE 89-2) at 13). Thus, this employee's health was a "mitigating circumstance that would distinguish [his] conduct or the employer's treatment of [him] for it." Haynes, 922 F.3d at 223-224.

Finally, plaintiff suggests in her deposition that one of defendant's employees "gave another employee the middle finger" during a staff meeting but was not disciplined. (Pl. Dep. (DE 89-1) 111:24-112:11). However, when questioned about the incident, plaintiff was unable to provide any information about it. (See id. at 112:12-114:1). Plaintiff fails to establish that she and the employee had the same supervisor, were subject to the same standards, and engaged in the same conduct.

In sum, plaintiff fails to create a genuine issue of material fact regarding her job performance or the treatment of similarly situated employees outside of the protected class. As a result, plaintiff has not carried her burden of establishing a prima facie case of discrimination, and defendant's motion for summary judgment must be granted on this issue.

2. Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

"A plaintiff may prove that an employer took action with discriminatory or retaliatory intent through direct evidence or through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Foster v. University of Maryland-Eastern Shore, 787 F.3d

9

243, 249 (4th Cir. 2015). "Under the burden-shifting framework, the plaintiff must first establish a prima facie case of retaliation by showing: (1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." Strothers v. City of Laurel, Maryland, 895 F.3d 317, 327 (4th Cir. 2018) (internal quotations omitted). Further, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Villa v. CavaMezze Grill, LLC, 858 F.3d, 896, 900 (4th Cir. 2017) (quoting University of Tx. Sw. Med. Center v. Nassar, 570 U.S. 338, 350 (2013).

Upon establishing a prima facie case, "[t]he burden then shifts to the [employer] to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." Foster, 787 F.3d at 250. "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." Strothers, 895 F.3d at 327. However "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." Hawkins v. PepsiCo, Inc., 203 F.3d 274 (4th Cir. 2000).

Here, plaintiff engaged in protected activity by filing a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). See Netter v. Barnes, 908 F.3d 932, 936 (4th Cir. 2018) (holding that protected activity encompasses filing a charge, testifying, assisting, or participating in an investigation, proceeding or hearing under Title VII). Further, plaintiff's termination constitutes an adverse employment action. See Ray v. International Paper Company, 909 F.3d 661, 670 (4th Cir. 2018) ("An adverse employment action is one that well might have dissuaded a reasonable worker from engaging in protected conduct.").

However, plaintiff has failed to carry her burden of establishing a causal connection between the filing of the charge and her termination. Significantly, plaintiff had already been placed on probation for poor job performance before she ever filed her charge of discrimination with the EEOC.[3] Furthermore, the written review, which notified plaintiff of her probation, warned plaintiff that she would be terminated if she did not improve her job performance. (Written Review (DE 89-3) at 3-4). Since plaintiff received this warning before filing a charge with the EEOC, it is axiomatic that her filing was not the requisite but-for cause of her termination.

Moreover, even if plaintiff could establish a prima facie case of retaliation, the burden would shift to defendant to show plaintiff was terminated for a "legitimate non-retaliatory reason." By offering substantial evidence of plaintiff's poor job performance, defendant has already provided a legitimate non-retaliatory reason for plaintiff's termination and satisfied its burden. See Evans v. Technologies Applications & Service Co., 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance . . . [is] widely recognized as [a] valid, non-discriminatory bas[is] for any adverse employment decision."); see also King, 328 F.3d at 149 (holding that it is the employer's opinion on job performance, not the employee's self-assessment, that is relevant in this inquiry). In sum, defendant's motion for summary judgment on the issue of retaliation must be granted.[4]

C. Motion to Seal

Plaintiff moves to seal materials filed in support of her motion for partial summary judgment. Where plaintiff's exhibits contain sensitive personal information identified under Fed. R. of Civ. P. 5.2, plaintiff's motion to seal is granted.

---

[3] Plaintiff was placed on probation on March 1, 2016. (Pl. Dep. (DE 89-1) 55:10-11; 46:12-15; Def's Stmt. (DE 81) at 8). She filed a charge of discrimination with the EEOC on May 22, 2016. (DE 1-1 at 4).

[4] Because the court grants defendant's motion for summary judgment, the court does not reach additional grounds for dismissal asserted by defendant.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion for summary judgment (DE 80) and DENIES plaintiff's motion for partial summary judgment (DE 84). Plaintiff's motion to seal (DE 87) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 15th day of November, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge